IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JAMIN DODAMIN OLIVA-MADRID,

    Petitioner,

        v.

          1:10cr191 (JCC)
          1:13cv322

UNITED STATES OF AMERICA,

    Respondent.

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Petitioner Jamin Dodamin Oliva-Madrid's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 [Dkt. 426] (the "Motion"). For the following reasons, the Court will deny Petitioner's Motion.

### I. Background

On June 3, 2010, a federal grand jury returned a one-count indictment charging petitioner, as well as fourteen other individuals, with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a) and 846. Petitioner and Esteban Salguero-Ortiz ("Defendant Salguero-Ortiz") elected a jury trial, and were subsequently convicted on

1

October 7, 2010, following a four-day jury trial.  Petitioner was sentenced on February 25, 2011, to 188 months with credit for time served, followed by five years of supervised release, a sentence below the Guidelines range.  Defendant Salguero-Ortiz was sentenced to 151 months, followed by five years of supervised release.  Petitioner and Defendant Salguero-Ortiz timely appealed.  After oral argument, their appeal was rejected by the Fourth Circuit in an unpublished opinion.  *See United States v. Salguero-Ortiz*, 483 F. App'x 858 (4th Cir. 2012).

On March 8, 2012, Petitioner filed a Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255.  The Motion posits three grounds upon which Petitioner intends to attack his sentence.  A Memorandum Brief in Support [Dkt. 426-1] was filed in conjunction with the Motion, although the Memorandum does not detail all of the grounds for collaterally attacking his sentence that had previously been listed in his Motion.  On the same day, Petitioner separately filed a Petition for Writ of Habeas Corpus [Dkt. 428], which explains Petitioner's other reasons for attacking his sentence that were previously unexplained in the Memorandum Brief in Support.

## II. Standard of Review

Under 28 U.S.C. § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the

2

United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962). To prevail on a § 2255 Motion, the petitioner bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

"[N]on-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Mikalakunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (citations and quotation marks omitted).

### III. Analysis

Petitioner argues that his sentence is subject to attack for three reasons: (1) the federal government is without authority to pursue criminal action against him due to the unconstitutionality of 21 U.S.C. §§ 841(a) and 846 as applied to his case; (2) the Court erred in its application of a three-level "aggravating role" adjustment, pursuant to U.S.S.G. § 3B1.1(b); (3) he received ineffective assistance from counsel at trial and upon appeal. The Court will address each of Petitioner's arguments in the order in which they were enumerated in his Motion.

3

## 1. **Petitioner's Position as to the Principles of Federalism**

Petitioner has offered an expansive indictment of the federal government's administration of the criminal justice system. Specifically, Petitioner challenges the constitutionality of 21 U.S.C. §§ 841(a) and 846 as applied to his case, arguing that prosecution of "localized" or intrastate conduct "brings citizens into the federal criminal system for conduct not properly subject of federal prosecutions, ... and significantly restricts the delicate balance between the state and federal governments ..." (Petitioner's First Memorandum ("Pet. First Mem.") 1.) It is Petitioner's position that 21 U.S.C. §§ 841(a) and 846 were enacted contrary to "the principles of federalism embodied in our [C]onstitution and the fair notice requirements of its due process claim" and that "by permitting prosecution of localized offenses . . . Article Ten signals a massive and unjustified expansion of federal law enforcement into state regulated domains." (*Id*.)

Petitioner's argument has been rejected by courts nationwide. Article I, § 8, of the Constitution firmly establishes the authority of the federal government to address both interstate and intrastate drug trafficking. "Congress'[s] power under the Commerce Clause is very broad. Even activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by

4

others similarly situated, affects commerce among the States or with foreign nations." *Fry v. United States*, 421 U.S. 542, 547 (1975). Indeed, the Supreme Court has affirmed repeatedly Congress's power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce. *See, e.g., Gonzales v. Raich*, 545 U.S. 1, 17 (2005); *Perez v. United States*, 402 U.S. 146, 151 (1971); *Wickard v. Filburn*, 317 U.S. 111, 128-129 (1942). If Congress decides that the "'total incidence'" of a practice poses a threat to a national market, it may regulate the entire class. *See Gonzales*, 545 U.S. at 2 (quoting *Perez*, 402 U.S. at 154-155). As the Supreme Court stated in *Wickard,* "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." *Wickard*, 317 U.S. at 125.

The Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Drug Act"), 21 U.S.C. § 801 *et seq.*, expresses the conclusion of Congress that trafficking in controlled substances, as a class of activities, has substantial and direct effects on interstate commerce and therefore requires federal regulation of both intrastate and interstate incidences. *See* 21 U.S.C.A. § 801 (stating that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is

5

essential to the effective control of the interstate incidents of such traffic").[1]

Courts have routinely rejected challenges to the federal government's authority under the Commerce Clause to criminalize intrastate possession, distribution, and sale of controlled substances. *See, e.g., United States v. Genao*, 79 F.3d 1333, 1335 (2d Cir. 1996); *United States v. Visman*, 919 F.2d 1390, 1393 (9th Cir. 1990); *United States v. Weinrich*, 586 F.2d 481, 498 (5th Cir. 1978); *United States v. Rodriquez-Camacho*, 468 F.2d 1220, 1221-22 (9th Cir. 1972); *United States v. Lopez*, 459 F.2d 949, 951 (5th Cir. 1972), *cert. denied*, 409 U.S. 878, 950 (1972). Furthermore, the Fourth Circuit itself has repeatedly affirmed the federal government's authority to address intrastate drug trafficking against Commerce Clause challenges. *See, e.g., United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995); *United States v. Reynolds*, 10 F. App'x 62, 64 (4th Cir. 2001) (unpublished); *United States v. Jones*, 30 F. App'x 173 (4th Cir. 2002) (unpublished); *United States v. Mason*, 82 F. App'x 310, 313 (4th Cir. 2003) (unpublished); *United States v. Atkinson*, 513 F.2d 38, 39 (4th Cir. 1975). Indeed, the Fourth Circuit stated in *Leshuk* that "the intrastate drug activities regulated in the Drug Act are clearly tied to

---

[1] The Court notes, for the sake of absolute clarity, that 21 U.S.C. §§ 841(a) and 846 constitute portions of the Drug Act.

6

interstate commerce." *Leshuk*, 65 F.3d at 1111. The Fourth
Circuit further stated that

> [i]n passing the Drug Act, Congress made
> detailed findings that intrastate
> manufacture, distribution, and possession of
> controlled substances, as a class of
> activities, have a substantial and direct
> effect upon interstate drug trafficking and
> that effective control of the interstate
> problems requires the regulation of both
> intrastate and interstate activities.

*Id*. Given the overwhelming breadth of authority holding that even localized drug trafficking is subject to regulation by the federal government, this Court must reject Petitioner's position that 21 U.S.C. §§ 841(a) and 846 are unconstitutional as applied to his case.

### 2. <u>U.S.S.G. § 3B1.1(b) Enhancement</u>

Petitioner contends that the Court erred in applying an aggravating role enhancement, pursuant to U.S.S.G. § 3B1.1(b). Petitioner challenges the Court's finding as to the aspect of § 3B1.1(b) relating to enhancement based upon management or supervision, contending that he was "never an organizer/leader." (Petitioner's Second Memorandum ("Pet. Second Mem.") 6.) Petitioner also contends that the Court "relied upon ... misleading information to determine [his] sentence" and that unspecified hearsay statements of the "cooperating co-defendants lacked even the minimal indicia of reliability." (*Id.*)

7

Pursuant to U.S.S.G. § 3B1.1(b), a three-level adjustment to a defendant's offense level is appropriate where the defendant was a manager or supervisor "and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b) (2010). "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1(b) cmt. n.2.

Reliance on hearsay evidence at sentencing is specifically authorized. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (2006); *see also* U.S.S.G. § 1B1.4 (2006). Moreover, the traditional rules of evidence are not applicable to sentencing proceedings. *See* Fed.R.Evid. 1101(d)(3). Thus, a court may consider any related and reliable evidence before it, including hearsay, in establishing relevant conduct. *See United States v. Bowman*, 926 F.2d 380, 381 (4th Cir. 1991).

The Court believes that the § 3B1.1(b) enhancement was properly applied in this case. The record demonstrates that Petitioner recruited his girlfriend, Nuria Argueta-Martinez, to sell cocaine in Manassas, Virginia and thereafter supervised her

activities for a period of time.[2] These facts alone are sufficient to support the Court's application of the enhancement.[3] *See United States v. Rashwan,* 328 F.3d 160, 166 (4th Cir. 2003) (stating that "[l]eadership over only one other participant is sufficient as long as there is some control exercised"). Furthermore, Petitioner's argument that he was "never an organizer/leader" is irrelevant to the Court's application of a § 3B1.1(b) adjustment, as adjustment for having served as an organizer or leader of criminal activity falls within the province of § 3B1.1(a).

The Court also notes Fourth Circuit addressed the issue of this Court's application of § 3B1.1(b) on direct appeal, stating that "[t]here is no dispute that this criminal conspiracy was otherwise 'extensive'" and rejecting the notion that Petitioner was not a "manager or supervisor." *Salguero-Ortiz*, 483 F. App'x at 862. The Fourth Circuit held that this Court did not err in applying the § 3B1.1(b) sentence enhancement. *Id*. Once an issue has been fully considered and decided by the court of appeals, the defendant cannot re-

---

[2] The fact that Ms. Argueta-Martinez was Petitioner's girlfriend is immaterial to the applicability of the enhancement. *See United States v. Izegwire,* 371 F. App'x 369, 375 (4th Cir. 2010) (unpublished) (holding that the defendant was a supervisor or manager based upon instruction of his girlfriend in overt acts in furtherance of the conspiracy).

[3] In addition, evidence adduced at trial suggests that Petitioner exercised financial management responsibility, having written several checks to the leader of the conspiracy, Jorge Gutierrez, in order to pay for cocaine, though the Court need not even reach this issue for the enhancement to have been proper.

litigate the issue before this court under § 2255. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

Petitioner argues that this Court "should not have imposed any level of enhancement of Defendant's sentence because the cooperating co-defendants lacked even the minimal indicia of reliability." (Pet. Second Mem. 6.) Petitioner has not offered any substantive argument supporting such an assertion. Petitioner neither explains why he considers the "cooperating co-defendants" to have been collectively unreliable, nor does he even so much as identify any particular co-defendants or hearsay statements that he believes the Court relied upon erroneously in determining his sentence. Petitioner bears the burden of proof by a preponderance of the evidence, yet has offered nothing more than formulaic and conclusory recitation of principles associated with reliance upon hearsay evidence at sentencing. Consequently, this Court will reject Petitioner's argument as devoid of any substantive or evidentiary support.

### 3. Ineffective Assistance of Counsel

Petitioner states that his trial counsel and appellate counsel both "failed to raise the issue of separation of powers between the state government and federal government in prosecuting the defendant." (Pet. Second Mem. 8.) Although Petitioner did not raise an ineffective assistance of counsel

claim on appeal, such claims may be the subject of a proper § 2255 petition despite a failure to seek direct review. *See United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991).

Under *Strickland v. Washington*, counsel's representation is ineffective where it falls "below an objective standard of reasonableness," creating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," *id*. at 690 (defining ineffective assistance of counsel as falling below an objective standard of reasonableness and applying a strong presumption of competence and deference to attorney judgment); and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "The petitioner must show both deficient performance and prejudice; the two are separate and distinct elements of an ineffective assistance claim." *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1994).

With respect to the first prong of the *Strickland* test, the performance prong, "[j]udicial scrutiny of counsel's

11

performance must be highly deferential." *Strickland*, 466 U.S. at 689. The Supreme Court has elaborated on the deference due to counsel's performance, explaining that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (quotation marks and internal citations omitted).

With respect to the second prong, the prejudice prong, "a reasonable probability [of prejudice] is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Finally, under either prong, this Court evaluates "the reasonableness of counsel's performance . . . from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." *Hooper*, 845 F.2d at 476 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

The Court rejected in its foregoing analysis Petitioner's argument that his conviction is invalid due to the unconstitutionality of 21 U.S.C. §§ 841(a) and 846 as applied to

12

intrastate drug trafficking.  The Court believes that counsel's failure to raise such an argument at trial or upon appeal was neither outside the range of professionally competent assistance nor likely to change to the results of the respective proceedings.  The Fourth Circuit, like numerous other courts nationwide, has repeatedly rejected Petitioner's argument as contrary to the firmly-established power of Congress to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce.  Consequently, there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument.  *See Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996); *see also Hansford v. Angelone*, 244 F. Supp. 2d 606, 614 (E.D. Va. 2002); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (holding that "[c]ounsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim" on appeal) (quoting *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990), *cert. denied*, 498 U.S. 1033 (1991)).

## IV. Conclusion

For the foregoing reasons, the Court will deny Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| July 23, 2013 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |